■ The People of the State of New York, Respondent, v Ignacio Diaz, Appellant.—Judgment, Supreme Court, Bronx County (Joseph Cerbone, J.), rendered June 22, 1989, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the second degree, and sentencing him to a term of imprisonment of from six years to life, affirmed.

On October 11, 1988, at approximately 5:30 P.M., while

driving east on Featherbed Lane in the Bronx, plainclothed Police Officer Mahones and his partner observed defendant stepping out of the building at 15 Featherbed Lane holding a dark, opaque plastic bag closely against his body. Officer Mahones looked twice at defendant and told his partner that he "had something", and that they should "see what he [was] doing there" because "it looked very strange to hold the bag close to the body." Never losing sight of defendant, the officers made a U-turn, drove back and double-parked near where defendant had begun to cross the street. Officer Mahones exited the car with his shield visibly hanging from his chest and his hand held over his gun, noticeable at his waist. He approached defendant and prepared to instruct him to stop, but before he could do so, defendant's eyes focused on the officer's shield, and "popped open" in surprise, whereupon defendant immediately threw the bag at Officer Mahones and ran in the opposite direction. After retrieving the bag from the floor and opening it, Officer Mahones recognized the brick-like package in the bag as a kilo of cocaine. He yelled to his partner to get defendant, and defendant was subsequently arrested.

In a written decision, the hearing court denied defendant's suppression motion, and thereafter defendant pled guilty to criminal possession of a controlled substance in the second degree and was sentenced to six years to life.

On appeal, defendant challenges the propriety of the initial approach, claiming that the attendant circumstances did not give rise to a " 'founded suspicion that criminal activity [was] afoot' " permitting a common-law right of inquiry (quoting, *People v De Bour,* 40 NY2d 210, 223).

We disagree. Officer Mahones' conduct did not constitute an intrusion, inasmuch as defendant ran off before the officer could make any inquiry. And, in any event defendant's peculiar behavior in clutching the black plastic bag to his body—in an area described by Officer Mahones as drug-prone—sufficiently satisfied the "objective credible" criterion necessary to permit an officer to request information *(supra,* at 223).

Moreover, defendant's abandonment of the plastic bag was intentional rather than spontaneous. "[A]lthough the time was brief, the defendant had had time enough to reflect and formulate a strategy for ridding himself of the incriminating evidence" *(People v Boodle,* 47 NY2d 398, 404), particularly since he registered his awareness of the officer's presence by widening his eyes in apparent surprise.

Defendant's claim that the sentence is excessive is also without merit. Defendant possessed a large quantity of drugs for which he would have been subject to a mandatory minimum sentence of from 15 years to life had he been convicted by a jury as charged. Moreover, the sentence defendant received was that promised him in exchange for his plea (see, People v Farrar, 52 NY2d 302, 306-307). Concur—Wallach, J. P., Kupferman and Ross, JJ.

Smith, J., dissents in a memorandum as follows: The police had no right to approach the defendant since they had no reasonable suspicion that a crime had been, was being or was about to be committed. Accordingly, the defendant's motion to suppress the drugs should have been granted.

On October 11, 1988 around 5:30 P.M., Police Officer Mahones and his partner, who were assigned to the Bronx Anti-Crime Narcotics Drive, were in plain clothes in an unmarked patrol car in the Bronx, New York City. As they were driving, the officers saw defendant emerge from a building carrying a plastic bag against his body. Although there was no evidence of criminal activity, the officers determined to investigate the defendant. Specifically, Officer Mahones testified as follows: "We were driving on Featherbed Lane going east. We got to the front of 15 Featherbed Lane I observed the defendant Diaz as coming out of the building. When he was stepping out he was holding a bag up against his body like this. I looked twice I told my partner this guy has something, lets see what he is doing there, what's going on. It looked very strange to hold the bag close to the body. My partner went down to the block, made a U-turn and came back up."

The officers turned their car around and returned to the area where the defendant was walking. Officer Mahones got out of his car, put his shield outside of his clothing and with his hand on his gun, approached the defendant. He may have motioned for the defendant to stop. He was about to speak to the defendant. When the defendant saw his shield, the defendant's "eyes popped opened [sic]" and he threw the bag at the officer. The bag was opened and a brick-like object found. It turned out to be cocaine. There was a chase and the defendant was apprehended.

In People v De Bour (40 NY2d 210, 223 [1976]), the Court of Appeals discussed the four types of approaches which the police could make to citizens. The first is an approach to request information. The second is "the common-law right to inquire" "activated by a founded suspicion that criminal

activity is afoot" *(supra,* at 223). The third is a stop pursuant to CPL 140.50 (1). The fourth is an arrest based on probable cause.

In this case the People do not argue and the evidence does not support the first type of approach, that is, to request information. It is clear, moreover, that the evidence does not support an approach based upon a founded suspicion that criminal activity was afoot. There is simply no view of the evidence which can justify an approach to the defendant based upon his carrying a plastic bag. There was no founded suspicion of criminal activity.

Finally, there was no basis for approaching the defendant pursuant to CPL 140.50 (1). That section permits an officer to approach and stop a person based upon reasonable suspicion that criminal activity is afoot. CPL 140.50 (1) reads as follows:

"§ 140.50. Temporary questioning of persons in public places; search for weapons.

"1. In addition to the authority provided by this article for making an arrest without a warrant, a police officer may stop a person in a public place located within the geographical area of such officer's employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct."

Here, there was no reasonable suspicion of criminal activity.

The law requires more than a hunch for the police to approach an individual even in a drug prone neighborhood. The motion to suppress should have been granted.